IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge S. Kato Crews

Civil Action No. 1:21-cv-01804-RMR-SKC

TITUS PETERSON and
DIEGO QUINTOS DE PETERSON,

    Plaintiffs,

v.

CITY AND COUNTY OF DENVER, COLORADO, *et al.*,

    Defendants.

---

## RECOMMENDATION RE: MOTIONS TO DISMISS [DKTS. 38, 39]

---

While Plaintiffs Titus Peterson and Diego Quintos de Peterson were attending a Black Lives Matter rally on May 30, 2020, Defendant Patrick Phelan (a commander with the Denver Police Department) allegedly ordered the use of chemical agents on the crowd of peaceful protesters. [Dkt. 27.] According to the Second Amended Complaint ("SAC"), Plaintiffs were caught in a cloud of tear gas which burned their eyes and lungs and forced them to flee the area. Plaintiffs now bring this action under 42 U.S.C. § 1983 and assert claims for violations of the First, Fourth, and Fourteenth Amendments. [*Id*.] All Defendants have moved to dismiss the claims against them, and Defendants Phelan and Paul Pazen (Denver Chief of Police) have asserted the

1

qualified immunity defense. [Dkts. 38, 39.][1] The presiding judge referred the Motions to the magistrate judge for a recommendation. The Court has reviewed the Motions, related briefing, and relevant law. No hearing is necessary. For the following reasons, the Court RECOMMENDS the Motions be GRANTED IN PART and DENIED IN PART.

## STANDARD OF REVIEW

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." *See* Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the Court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124-25 (10th Cir. 2010) (internal citations omitted). The Court is not, however, "bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. at 678 (internal quotation marks omitted).

The *Twombly/Iqbal* pleading standard first requires the court to identify

---

[1] Although Defendants filed separate motions, these filings cross-reference one another, and Defendants filed a joint Reply. The Court addresses all arguments together.

which allegations "are not entitled to the assumption of truth" because, for example, they state legal conclusions or merely recite the elements of a claim. *Id.* at 678. It next requires the court to assume the truth of the well-pleaded factual allegations "and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. In this analysis, courts "disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012). The standard is a liberal one, however, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely." *Dias v. City & Cty. of Denver,* 567 F.3d 1169, 1178 (10th Cir. 2009).

## QUALIFIED IMMUNITY

Defendants Pazen and Phelan have raised the qualified immunity defense to the various claims asserted against them. Qualified immunity shields "government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotation omitted). Whether defendants are entitled to qualified immunity is a legal question. *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007).

In resolving a motion to dismiss based on qualified immunity, this Court must consider "whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right," and "whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Pearson*, 555 U.S. at 232. The plaintiff bears the burden of showing, with particularity, facts and law establishing the inference that the defendant violated a clearly established federal constitutional or statutory right. *Walter v. Morton*, 33 F.3d 1240, 1242 (10th Cir. 1994). If the plaintiff fails to satisfy either prong, the defendant is entitled to qualified immunity. *Pearson*, 555 U.S. at 236. The court has discretion to consider these prongs in any order. *Leverington v. City of Colorado Springs*, 643 F.3d 719, 732 (10th Cir. 2011).

## ANALYSIS

### A.  Documents Outside of the Pleadings

The standard of review for defendants asserting a qualified immunity defense in a motion to dismiss "subjects the defendant[s] to a more challenging standard of review than would apply on summary judgment." *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014). On a motion to dismiss, "it is the defendant's conduct *as alleged in the complaint* that is scrutinized for 'objective legal reasonableness.'" *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996) (emphasis in original).

Defendants here argue or suggest throughout their Motions that Plaintiffs' allegations—in particular, that the protest on May 30, 2020, was peaceful—are not entitled to the presumption of truth. [*See* Dkts. 38, 39.] They attached evidence (still

4

images) to their Motions to support their argument Defendants' conduct was reasonable under the circumstances.

When deciding a motion to dismiss, the district court is "limited to assessing the legal sufficiency of the allegations contained within the four corners of the complaint." *Kearney v. Dimanna*, 195 F. App'x 717, 721 n.2 (10th Cir. 2006). The Court may consider documents attached to, and referenced in, the complaint when reviewing the motion to dismiss. *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).

Citing *Estate of Ronquillo v. Denver*, 720 F. App'x 434 (10th Cir. 2017), Defendants ask this Court to review an image from surveillance video taken on the day of the protest. In *Ronquillo*, the Tenth Circuit considered the District Court's order granting a motion to dismiss and stated, "we accept as true Plaintiff's allegations except when directly [contradicted] by the attached exhibits—in this case the video of the incident." *Id.* at 437. Here, however, Plaintiffs neither attached nor referred to any surveillance video in the SAC. Rather, Defendants produced a still image from surveillance video and ask the Court to look outside the four corners of the pleadings to consider the image.[2] More problematic, a single frame from a

---

[2] Defendants also cite to *Jackson v. Gatto*, No. 13-cv-02516-CBS, 2014 WL 2743130, at *3 (D. Colo. June 17, 2014). But in that case, the plaintiff specifically alleged the defendant officer activated his car's audio/video device, which recorded all the events central to the claims in the case. When the defendant included the video with his motion to dismiss, Plaintiff did not dispute the authenticity of the recording and, to be sure, asked Magistrate Judge Craig B. Shaffer to consider the recording. The same cannot be said for the present matter.

surveillance video is a far cry from the actual footage. Even if the Court were to consider the photograph, the still image does not directly contradict Plaintiff's allegations. To the contrary, it shows over a dozen officers clad in tactical gear and gas masks, standing under what appears to be a deployed aerosol. Several officers have their guns drawn and pointed at members of the public who are otherwise standing still—as is the nature of a still photograph.

The Court exercises its prerogative and declines to consider evidence outside of the pleadings. *Prager v. LaFaver*, 108 F.3d 1185, 1189 (10th Cir. 1999) (a court may in its discretion decline to consider documents attached to a motion to dismiss even if it could properly do so). The Court accepts as true Plaintiffs' allegations the May 30, 2020 protest was peaceful and without violence or risk to persons or property. [Dkt. 27 at ¶39.]

**B.     First Amendment – Freedom of Speech and Assembly**

"[T]he First Amendment safeguards an individual's right to participate in the public debate through political expression and political association." *McCutcheon v. Fed. Election Com'n*, 572 U.S. 185, 203 (2014). "The Supreme Court 'has repeatedly held that police may not interfere with orderly, nonviolent protests merely because they disagree with the content of the speech or because they simply fear possible disorder.'" *Minter v. City of Aurora*, No. 20-cv-02172-RMR-NYW, 2022 WL 900158, at *5 (D. Colo. March 28, 2022) (quoting *Jones v. Parmley*, 465 F.3d 46, 56 (2d Cir. 2006)). Plaintiffs allege Defendants violated their right to free speech and assembly

6

under the United States Constitution because Defendants' actions and restrictions were content-based and not narrowly tailored to a compelling government interest.

Governments, including municipalities, have no authority to restrict speech because of its messages, ideas, or content. *Id.* (quoting *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015)). "Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Id*. "Content-based speech restrictions 'must satisfy strict scrutiny,' meaning they must be 'narrowly tailored to serve a compelling government interest'". *Epps v. City and County of Denver*, ___ F.Supp.3d ___, ___, 2022 WL 605739, at \*3 (D. Colo. 2022) (quoting *Verlo v. Martinez*, 820 F.3d 1113, 1134 (10th Cir. 2016)).

The Court finds Plaintiffs have stated a plausible claim that Defendants discriminated against them based on the content of their speech. Plaintiffs allege they were peaceful and not engaged in any destructive conduct. [Dkt. 27 at ¶39.] These factual allegations, taken as true, are sufficient to plausibly allege Defendants' actions were based on the content of Plaintiffs' speech and not any compelling government interest to maintain officer and public safety. *See Minter*, 2022 WL 900158, at \*5 (allegations the defendants labeled protesters as "violent" prior to the otherwise peaceful protest stated a First Amendment claim); *Epps*, 2022 WL 605739, at \*4 (curfew was content based because "because it applied only to those participating in what the DPD referred to as the George Floyd protests"). The same is true of Plaintiffs' allegations concerning viewpoint discrimination. The SAC alleges

7

a "Pro-Trump" rally of similar size was allowed to proceed in the same location without incident or use of any force. [*Id.* at ¶42.] Taking this fact as true, the SAC alleges a plausible claim for viewpoint discrimination.

For similar reasons, the Court also concludes Defendants' actions were not narrowly tailored to further a legitimate government interest. As previously discussed, the Court declines Defendants' invitation to consider evidence outside of the pleadings, and instead accepts as true Plaintiffs' allegations the protest was peaceful and there was no threat of violence. Considering the alleged peaceful nature, of Plaintiffs' conduct, the SAC plausibly alleges Defendants' use of tear gas against them was not narrowly tailored, and therefore, violated Plaintiffs' constitutional rights.

The Court recommends denying the Motions regarding the First Amendment freedom of speech and assembly claim.

**C.     First Amendment – Retaliation**

Plaintiffs also allege Defendants used unlawful force against them in retaliation for exercising their First Amendment rights to protest. Here Plaintiffs must allege facts plausibly supporting these elements: "(1) the plaintiff was engaged in constitutionally protected activity; (2) the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected

8

conduct." *See Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000). Defendants focus their arguments on the third element—whether Plaintiffs have adequately alleged Defendants' actions were motivated by Plaintiffs' protected speech. [*See* Dkt. 39 at pp.5-6.]

Defendants seem to contend Plaintiffs' retaliation claim fails because Plaintiffs were not yet part of the protests, and thus, Defendants actions could not be in retaliation for their speech.[3] [*Id.*] But this mischaracterizes Plaintiffs' allegations. The SAC specifically alleges Plaintiffs drove to downtown Denver to join the "George Floyd Protests" and express their opposition to racial injustice and police brutality. [Dkt. 27 at ¶25.] As they approached other like-minded protesters, Defendants fired tear gas in several directions, including where Plaintiffs were located. Defendants have not cited any case law supporting a particular time threshold before First Amendment conduct qualifies for protection, and the Court could find none. Construing these allegations in the light most favorable to Plaintiffs, as the Court must, the Court concludes a reasonable juror could find Plaintiffs were engaged in protected conduct when they chose to associate with other protesters despite having only just arrived. *McCutcheon*, 572 U.S. at 203.

---

[3] Defendants appear to concede that the threat of physical harm would chill an ordinary citizen. To the extent they do not, the Court makes its finding explicit—being subjected to tear gas would indeed chill similar protected speech. *See Minter*, 2022 WL 900158 (allegations of being subject to chemical agents and physical force established second prong of retaliation analysis); *Black Lives Matter Seattle-King Cty.*, 466 F. Supp. 3d at 1214 (exposure to tear gas and pepper spray is "excruciating" and would chill speech).

9

And for reasons like those discussed above, the Court finds the SAC plausibly alleges Defendants' use of tear gas was retaliatory and motivated by Plaintiffs' exercise of constitutionally-protected conduct. *Minter*, 2022 WL 900158, at *7; *Hartman v. Moore*, 547 U.S. 250, 256 (2006) ("When nonretaliatory grounds are in fact insufficient to provoke the adverse consequences, . . . retaliation is subject to recovery as the but-for cause of official action offending the Constitution."); *see also Black Lives Matter Seattle-King Cty. v. City of Seattle, Seattle Police Dep't,* 466 F. Supp. 3d 1206, 1214 (W.D. Wash. 2020) ("The use of indiscriminate weapons against all protesters—not just the violent ones—supports the inference that [officers'] actions were substantially motivated by Plaintiffs' protected First Amendment activity.").

The Court recommends denying the Motions regarding the First Amendment retaliation claim.

## D.     **Fourth Amendment – Excessive Use of Force**

Claims that an officer used excessive force during the arrest of an individual are analyzed under the Fourth Amendment's "objective reasonableness" standard. *See Graham v. Connor*, 490 U.S. 386, 395 (1989). The Fourth Amendment guarantees citizens the right "to be secure in their persons. . . against unreasonable. . . seizures," and the reasonableness of a seizure depends on when it was made and on how it was carried out. *Id*. at 394-95. Specifically, the court should consider the severity of the crime at issue, whether the arrestee posed an immediate threat to the safety of the

officers, and whether he was actively resisting arrest or attempting to flee. *Id.* at 396 (citing *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985)). The reasonableness test established in *Graham* guides that whether a particular use of force was reasonable "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Minter*, 2022 WL 900158, at *10 (quoting *Graham*, 490 U.S. at 396). An officer's use of force "is a violation of clearly established law if there are 'no substantial grounds for a reasonable officer to conclude that there was legitimate justification' for acting as she did." *Casey v. City of Federal Heights*, 509 F.3d 1278, 1286 (10th Cir. 2007) (quoting *Holland ex. rel. Overdorff v. Harrington*, 268 F.3d 1179, 1193 (10th Cir. 2001)). "*Graham* establishes that force is least justified against nonviolent misdemeanants who do not flee or actively resist arrest." *Casey*, 509 F.3d at 1285. "Whether the police used excessive force in a § 1983 case has always been seen as a factual inquiry best answered by the fact finder." *Quezada v. County of Bernalillo*, 944 F.2d 710, 715 (10th Cir. 1991) (collecting cases), *overruled on other grounds by Saucier v. Katz*, 533 U.S. 194 (2001).

The allegations discussed in the Court's First Amendment analysis also support Plaintiffs' excessive-use-of-force claim. Again, the SAC alleges Plaintiffs were engaged in peaceful, nonviolent protest at the time Defendants used tear gas on them. None of the facts alleged in the SAC suggest Plaintiffs (or any protesters) were armed or posed a threat to persons or property, nor are there allegations that Plaintiffs were arrested or actively evading arrest. Consequently, under the *Graham* test, the Court

11

recommends finding Plaintiffs have stated a plausible claim for excessive use of force.

### E.     Fourteenth Amendment – Excessive Force

Defendants seek to dismiss Plaintiffs' claim pursuant to the Fourteenth Amendment on the basis it fails to sufficiently allege the necessary elements. The Court does not address these arguments, however, because it concludes dismissal is appropriate on different grounds.

In *Graham*, the Supreme Court noted "the Fourth Amendment provides an explicit textual source of constitutional protection against [the] sort of physically intrusive governmental conduct" alleged in this case. *Graham v. Connor*, 490 U.S. at 395. The Court held that all excessive force claims arising from an arrest, investigatory stop, or other seizure should be analyzed under the Fourth Amendment's reasonableness standard, as opposed to a substantive due process analysis. *Id*. To be sure, Plaintiffs recognize this claim is an alternative to their Fourth Amendment claim. [Dkt. 46 at p.27.] Because the Court concluded Plaintiffs alleged a plausible claim under the Fourth Amendment, the Court recommends granting the Motions regarding the Fourteenth Amendment excessive-force claim.

### F.     Fourteenth Amendment – Due Process

The Fourteenth Amendment requires states to provide its citizens fair warning of conduct the state has forbidden or required by law or otherwise. *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012). A law is unconstitutionally vague if it fails to provide the kind of notice that will enable citizens to conform their

behavior to the law. *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999). A statute or rule can be "impermissibly vague for either of two independent reasons. First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732 (2000) (citing *Morales*, 527 U.S. at 56–57). The prohibition on vague regulations is stronger when the regulation in question implicates the First Amendment. "When speech is involved, rigorous adherence to those requirements is necessary to ensure that ambiguity does not chill protected speech." *Fox Television Stations, Inc.*, 567 U.S. at 253-54.

As the Court understands the allegations in the SAC, Plaintiffs allege the City and County of Denver has an unwritten policy or practice of permitting police officers to disperse protestors with tear gas without first giving a proper warning. The SAC is replete with allegations of specific incidents from the "George Floyd Protests" of officers deploying chemical agents without first giving protesters time to disperse or comply—to be sure, Plaintiffs allege Defendants used tear gas without warning on the protesters every day, often multiple times during the day. This recurrence alone supports an inference the policy fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct what required of them.

In its Motion, Denver notes Plaintiffs have not challenged any specific regulation or statute as being unconstitutionally vague. The unwritten nature of this

alleged policy is not, in and of itself, fatal. *Faustin v. City & Cnty. of Denver, Colo.*, 423 F.3d 1192, 1202 (10th Cir. 2005) (citing *Lebron v. National Railroad Passenger Corp.*, 69 F.3d 650, 658 (2d Cir.1995) (unwritten policy prohibiting all political advertising was not unconstitutional)). "An unwritten policy can become 'explicit' through well-established practice." *Seidman v. Paradise Valley Unified Sch. Dist. No. 69*, 327 F. Supp. 2d 1098, 1116 (D. Ariz. 2004) (citing *Families Achieving Indep. & Respect v. Nebraska Dep't of Soc. Servs.*, 111 F.3d 1408, 1415 (8th Cir. 1997)); *see also Faustin v. City & Cnty. of Denver, Colo.*, 423 F.3d 1192, 1202 (10th Cir. 2005) (despite being unwritten, Denver's policy of prohibiting the display of signs on overpasses visible to traffic below was always clearly articulated and asserted).

Here, however, the Court is persuaded Plaintiffs have stated a plausible claim because the alleged unwritten policy appears to authorize or even encourage arbitrary and discriminatory enforcement thereof. *M.S. News Co. v. Casado*, 721 F.2d 1281, 1290 (10th Cir. 1983). By its nature, Denver's alleged policy commits discretion to its officers to disperse protesters "without sufficient notice and opportunity to comply before being subjected to uses of force . . . in violation of plaintiffs' [First, Fourth, and Fourteenth] Amendment rights." *Ahmad v. City of St. Louis*, No. 4:17 CV 2455 CPD, 2017 WL 5478410, at *15 (E.D. Mo. Nov. 15, 2017).[4] The arbitrary nature

---

[4] The Court also notes that in his order in *Abay v. City of Denver*, 445 F.Supp.3d 1286, 1295 (D. Colo. 2020), which related to the same time and events implicated here, Senior District Judge R. Brooke Jackson, required the defendants to provide citizens with an adequate time and opportunity to comply with dispersal orders prior to using chemical agents. The necessity of this order suggests such opportunities and

14

of the policy is further buttressed by Plaintiffs' allegations the Denver Defendants chose not to exercise their discretion during the similarly sized "Pro-Trump" rally. Therefore, the Court recommends finding Plaintiffs have stated a Fourteenth Amendment due process claim. *Hill*, 530 U.S. at 732.

## G. Individual Defendants

Defendants Pazen and Phelan contend they are entitled to qualified immunity because Plaintiffs have failed to allege their personal participation in a clearly established constitutional violation. Personal participation is an essential allegation in a civil rights action. *See Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976). To maintain a § 1983 claim, the plaintiff must allege facts showing the defendant was "personally involved in the decisions leading to [the plaintiff's] mistreatment." *Escobar v. Reid*, 668 F.Supp.2d 1260, 1290 (D. Colo. 2009). A plaintiff must establish an affirmative link between the alleged constitutional violation and each defendant's participation, control, or direction. *Serna v. Colo. Dept. of Corr.,* 455 F.3d 1146, 1152-53 (10th Cir. 2006).

Defendants—citing to the allegations regarding Pazen's and Phelan's supervisory roles—argue Plaintiffs have done little more than assert claims of *respondeat superior* against the individual defendants. This contention, however, overlooks other of Plaintiffs' allegations of a direct causal connection between these Defendants and the alleged violation of Plaintiffs' constitutional rights. Specifically,

---

warnings were not previously being given.

Plaintiffs allege Commander Phalen authorized and ordered the use of tear gas on Plaintiffs and their fellow protesters. [Dkt. 27 at ¶¶10, 35.] Plaintiffs further allege Chief Pazen gave his officers the authority to use chemical agents on the protesters without warning. [*Id.* at ¶¶9, 54, 84.] Although the allegations are limited and the question close, the Court concludes at this stage of the proceedings, Plaintiffs have sufficiently stated personal participation on the part of Defendants Pazen and Phelan.

The Court does not spend significant time on the second prong of the qualified immunity analysis because, as its foregoing discussion makes evident, it has been clearly established in the Tenth Circuit that an officer may not infringe upon or retaliate against citizens based on the content of their speech or their decisions to engage in peaceful protest. It is further established officers may not use unreasonable force upon those who are not committing any crimes, posing an immediate threat to the safety of the officers, or actively resisting arrest or attempting to flee. [*See* Section B, C, D.] The Court, therefore, recommends finding these Defendants are not entitled to qualified immunity on Plaintiff's First and Fourth Amendment claims[5]. See *Verlo*, 820 F.3d at 1134; *Casey*, 509 F.3d at 1286; *Worrell*, 219 F.3d at 1212.

## H.    Municipal Liability

It is long-standing precedent that "[g]overnment officials may not be held liable

---

[5] Plaintiff's Fourteenth Amendment due process claim is seemingly stated only against the City and County of Denver.

16

for the unconstitutional conduct of their subordinates under a theory of respondeat superior." *Iqbal*, 556 U.S. at 676 (citing *Monell v. Department of Social Services*, 436 U.S. 658, 694-95 (1978)); *see also City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (a governmental entity "can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue.") (citing *Monell*, 436 U.S. at 694-95, 698). "[M]unicipal liability under § 1983 attaches where - and only where - a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Brammer-Hoelter v. Twin Peaks Charter Academy*, 602 F.3d 1175, 1188-89 (10th Cir. 2010) (internal quotation marks and citations omitted); *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013) ("[T]he Supreme Court require[s] a plaintiff to show that the policy was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury.").

To establish municipal liability under *Monell*, a plaintiff must show (1) a municipal employee committed a constitutional violation; and (2) a municipal policy or custom was the moving force behind the constitutional deprivation. *Jiron v. City of Lakewood*, 392 F.3d 410, 419 (10th Cir. 2004). "Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee."

*Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown*, 520 U.S. 397, 405 (1997).

### 1. Constitutional Violation by a Municipal Employee

The Court has concluded Plaintiffs sufficiently pleaded the Denver Defendants, including Pazen and Phelan, violated Plaintiffs' First, Fourth, and Fourteenth Amendment rights. Accordingly, the Court finds this first element of a *Monell* claim is satisfied.

### 2. Municipal Policy or Custom

A municipal policy or custom can take the form of: (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the possible injuries caused. *Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010) (citations and quotations omitted).

Plaintiffs allege several theories of municipal liability.[6] The Court, however,

---

[6] In their Reply, Defendants argue Plaintiffs impermissibly attempt to amend the SAC to assert the existence of an informal policy where it currently alleges only a written policy. [Dkt. 61.] But contrary to Defendants' arguments, Plaintiff's reference to the Operations Manual was only to define "tear gas" rather to evidence a written policy of excessive force. [Dkt. 27 at ¶49.] The SAC alleges the existence of an *informal*

need address only one to determine whether the *Monell* claim survives—Plaintiffs' allegations regarding Denver's continuing and widespread practice of subjecting otherwise peaceful protesters to tear gas.

Municipal liability may be based "on an informal custom so long as this custom amounts to a widespread practice that, although not authorized by written laws or express municipal policy, is so permanent and well settled as to constitute a custom or usage within the force of law." *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189 (10th Cir. 2010). A plaintiff may establish the "existence of such a continuing, persistent and widespread custom" by offering "evidence suggesting that similarly situated individuals were mistreated by the municipality in a similar way." *Carney v. City & Cty. of Denver*, 534 F.3d 1269, 1274 (10th Cir. 2008).

Here, the SAC describes in detail the events of May 28, 2020, to June 2, 2020, wherein Defendants allegedly used tear gas and other projectiles repeatedly on peaceful protesters who gathered to protest police brutality and the murder of George Floyd. In response, Defendants rely again on the argument that Plaintiffs' allegations that the protests were peaceful are not entitled to a presumption of truth. But they are at this motion-to-dismiss stage. Consequently, the Court concludes the SAC sufficiently states a claim of municipal liability against the City and County of Denver.

---

policy of excessive force, citing examples of other incidents of excessive force. Indeed, it would be unusual for a policy authorizing excessive force on peaceful protesters to exist in writing.

\* \* \*

For the foregoing reasons, the Court RECOMMENDS

1. The Motions to Dismiss be GRANTED IN PART and DENIED IN PART;

2. Plaintiffs' Fourth Claim of excessive force under the Fourteenth Amendment be dismissed; and

3. Plaintiffs' remaining claims be permitted to proceed.

DATED:  September 14, 2022.

BY THE COURT

_____

S. Kato Crews
United States Magistrate Judge